# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Crim Case No. SACR03-0070 DOC |
| | Civil Case No. SACV07-0427 DOC |
| **Plaintiff(s),** | |
| v. | |
| **SATISH SHETTY** | **ORDER DENYING MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255** |
| **Defendant(s).** | |

Before the Court is Petitioner Satish Shetty's ("Petitioner") Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 (the "Motion"). The Court finds the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15. After considering the moving, opposing, and replying papers thereon, and for the reasons stated below, the Court hereby DENIES the Motion.

**I. BACKGROUND**

On November 26, 2003, Petitioner Satish Shetty ("Petitioner") was indicted with five counts of bank fraud in violation of 18 U.S.C. §1344, and four counts of money laundering in violation of 18 U.S.C. §1956(a)(1)(A)(1). Petitioner was alleged in these indictments to have devised and participated in a scheme to defraud mortgage lenders. On December 8, 2003, Petitioner entered a

plea of "not-guilty" to all counts. On March 8, 2004, a motion filed by Petitioner for the suppression of evidence was denied by this Court. On April 8, 2004, pursuant to a written plea agreement, Petitioner plead guilty to Count Two (bank fraud) and Count Eight (money laundering) of the first superseding indictment. Petitioner was sentenced to fifteen months imprisonment on December 20, 2004. Petitioner now asks that the Court vacate, set aside, or correct his sentence.

**II. LEGAL STANDARD**

A motion to vacate, set aside, or correct sentence of person in federal custody pursuant to 28 U.S.C. § 2255 entitles a prisoner to relief:

> [i]f the court finds that...there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.

The standard of review of § 2255 petitions is "stringent" and the court "presumes earlier proceedings were correct." *United States v. Nelson*, 177 F. Supp. 2d 1181, 1187 (D. Kan. 2001) (citation omitted). In a successful § 2255 motion, the "defendant must show a defect in the proceedings which resulted in a 'complete miscarriage of justice.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). It is important to note that "relief is not available merely because of error that may have justified reversal on direct appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982); *United States v. Addonizio*, 442 U.S. 178, 184 (1979).

Petitioner requests relief under 28 U.S.C. § 2255 based on a claim of ineffective assistance of counsel (Sixth Amendment violation). There is a two prong test to challenge guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57-60 (1985). First, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 57. (Quoting *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984)) (commonly referenced as the "performance requirement"). Secondly, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial...." *Hill*, 474 U.S. at 59. This second prong is commonly referenced as the "prejudice requirement." Judicial scrutiny of counsel's performance is "highly deferential."

*Strickland*, 466 U.S. at 689. Consequently, there is a presumption that "counsel's conduct falls within the wide range of reasonable professional assistance [and] that...under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*.

### III. DISCUSSION

Although Petitioner sets forth a series of arguments attempting to prove his counsel's representation was unreasonable, the Court finds that Petitioner's counsel *was* reasonable. Consequently, Petitioner fails to satisfy the first prong of proving his guilty plea was the result of ineffective assistance of counsel. Because Petitioner fails the first prong, the Court finds it unnecessary to address whether Petitioner would not have plead guilty but for his counsel's actions.

Petitioner alleges that counsel was ineffective in various ways, including: (1) failing to attain consent prior to filing of plea; (2) failing to advise Petitioner of meritorious defenses; (3) failing to obtain or utilize a grand jury transcript; (4) failing to prepare for trial; (5) failing to adequately consult with the Petitioner; (6) failing to object to a violation of Federal Rule 11; (7) failing to advise Petitioner about possible immigration consequences; (8) failing to realize that Petitioner was incompetent to plead; (9) failing to inform Petitioner of the nature of the charges against him or the terms of the plea agreement; and (10) failing to notify the Court of a disagreement between counsel and Petitioner. The Court now addresses why each argument fails to show how Petitioner's counsel was ineffective.

**A. Counsel Filed Plea Without Consent**

Petitioner alleges his plea was filed without consent for two reasons. First, Petitioner argues that counsel coerced him into signing the plea agreement. Petitioner further alleges that he agreed to the plea because he feared that counsel would "withdraw from the case." Second, Petitioner alleges that his plea was the result of coercion perpetuated by the Court. Accordingly, Petitioner argues that there was ineffective assistance of counsel as his plea was made without consent.

"Whether defendant has pled voluntarily depends upon the competence of counsel's advice,...insofar as it affects the defendant's knowledge and understanding." 9 FED. PROC., L. ED. *Criminal Procedure* § 22 (2008). Because the guilty "plea is more than an admission of past conduct[,] it is the defendant's consent that judgment of conviction may be entered without a trial -

1 a waiver of his right to trial before a jury or a judge.  Waivers of constitutional rights not only must
2 be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant
3 circumstances and likely consequences." *United States v. Gearin*, 496 F.2d 691, 695-696 (5th Cir.
4 1974).  (Footnotes omitted).  In determining whether waivers are voluntary, knowing, and
5 intelligent, the court "should look to the totality of the circumstances evidenced by the record to
6 determine whether a plea was voluntarily and intelligently made." *Id*. at 696.

7 The Government has submitted several documents which demonstrate the Petitioner's consent
8 to the plea agreement.  First, the Plea Agreement states that Petitioner: (1) understood the agreement;
9 (2) was advised of his rights; and (3) entered into the agreement voluntarily and without threatened
10 force.  Second, the transcript from the Change of Plea Hearing, held on April 8, 2004, indicates that
11 the Petitioner responded affirmatively when asked if it was true that he understood the agreement and
12 entered into it voluntarily and free of force.  Lastly, the transcript of the December 20, 2004
13 sentencing indicates that the Petitioner was again questioned by the Court concerning the
14 voluntariness of the agreement.  The transcript indicates that the Court asked Petitioner if he would
15 prefer a trial and sought affirmation of his acceptance of a 15-month sentence.  Petitioner's counsel,
16 after discussing the matter with Petitioner, indicated on record that Petitioner accepted the sentence.
17 Petitioner has not claimed that his counsel deceived the Court in relaying this acceptance.

18 Petitioner additionally alleges that the these statements were the result of coercion perpetuated
19 by the Court.  At the Change of Plea Hearing, held on April 8, 2004, the Court stated that Petitioner's
20 counsel had done a "good job" in negotiating the plea.  During sentencing, on December 20, 2004,
21 the Court inquired whether the Petitioner would prefer to go to trial but stated that Petitioner would
22 receive the maximum sentence if convicted.  Petitioner alleges that these statements amounted to
23 coercion by the Court which left the Petitioner unable to voice his disagreement.  However, these
24 statements made by the Court do not constitute threats sufficient to make Petitioner's acceptance of
25 the plea involuntary.  The statement that Petitioner's counsel had done a "good job" in no way
26 implicates a threat against the Petitioner or suggests retribution for a failure to plead.  Additionally,
27 a plea is not considered involuntary when it is induced by a fear of greater penalty upon conviction
28 after trial.  *See Brady v. U.S.* 397 U.S. 742, 90 S.Ct. 1463 (1970).

**B. Counsel Failed to Advise Petitioner of Meritorious Defenses**

Petitioner alleges that counsel was ineffective for failing to advise him of two meritorious defenses. First, Petitioner alleges counsel was ineffective for failing to note that the statute of limitations had run on Count Six. Secondly, Petitioner argues that he was incorrectly charged with Count Two because the bank at issue was not federally insured as required by the statute he was charged under, 18 U.S.C. §1344.

**1. Statute of Limitations on Count Six**

Petitioner argues that although he did not plead guilty to Count Six, the fact that counsel did not allege a statute of limitation defense for the charge was ineffective assistance of counsel. Petitioner specifically alleges that had he known he had a defense to Count Six, he would have been less inclined to plead guilty to Count Two and Count Eight because he would ultimately be "facing fewer counts." Count Six of Petitioner's indictment charged a money laundering violation under 18 U.S.C. § 1956(a)(1)(A)(i) which has a five year statute of limitations. Petitioner alleges that the five year statute of limitations had expired on Count Six when he was indicted on March 26, 2003 as the violation, Petitioner contends, occurred on March 20, 1998. Money laundering under Section 1956(a)(1)(A)(i) is committed by:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity...with the intent to promote the carrying on of specified unlawful activity....

Petitioner argues that because the District Court in *United States v. Li* strictly interpreted the language of § 1956(a)(1)(A)(i), that the March 20, 1998 initiation date of the illegal transaction can control for the purposes of the five year statute of limitations. *United States v. Li*, 856 F. Supp. 421, 424 (N. D. Ill. 1994). Petitioner further argues that if the March 20, 1998 initiation date controls, he would in fact have a statute of limitations defense as the indictment was filed March 26, 2003.

1    The Court finds Petitioner's reliance on *Li* irrelevant.  There would still be no valid statute
2 of limitations defense because the indictment does not rely on a check issued March 20, 1998 but
3 rather a check issued March 26, 1998.  As noted by the Government, the transaction referred to in
4 the indictment was for a March 26, 1998 check issued to Noetic Investments and not the March 20,
5 1998 check for cash as alleged by Petitioner.  Consequently, counsel was not ineffective by failing
6 to raise this defense.

7    **2. Requirements of 18 U.S.C. § 1344 per Count Two**

8    Petitioner also argues counsel's assistance was ineffective because he failed to raise a
9 meritorious defense to Count Two of Petitioner's indictment, the violation of 18 U.S.C. § 1344.
10 Petitioner states that counsel was ineffective for failing to argue that Pan American, the affected
11 institution at issue in the indictment, was not federally insured ("FDIC insured") as required by §
12 1344.  Section 1344 states that bank fraud is committed by:

13    Whoever  knowingly executes, or attempts to execute, a scheme or
14    artifice– (1) to defraud a financial institution; or (2) to obtain any of the
15    moneys, funds, credits, assets, securities, or other property owned by,
16    or under the custody or control of, a financial institution, by means of
17    false or fraudulent pretenses, representations, or promises....

18 In the Ninth Circuit,"[p]roof of federally-insured status of the affected institution is...a jurisdictional
19 prerequisite as well as an element of the substantive crime." *United States v. Ali*, 266 F.3d 1242,
20 1243 (9th Cir. 2001) (quoting *United States v. Key*, 76 F.3d 350, 353 (11th Cir. 1996)).  A
21 conviction is supported if "viewing the evidence in the light most favorable to the prosecution, any
22 rational trier of fact could have found the essential elements of the crime beyond a reasonable
23 doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  As noted by the Ninth Circuit, the evidence
24 required to establish that the affected institution is insured is "minimal." *Ali*, 266 F.3d at 1244.

25    The Court finds that in light of the evidence put forth in the Government's Supplemental
26 Brief, counsel was not ineffective in raising the issue of whether Pan American was federally
27 insured.  The Government includes in its Supplemental Brief, a Declaration by United States
28 Internal Revenue Service Agent.  Included in the Declaration is an FDIC certificate and a separate

6

1  Declaration by FDIC counsel stating Pan American is, in fact, insured.  This evidence supports a
2  finding that Pan American was insured and thus, supports the conviction under § 1344.
3  Consequently, counsel was not ineffective by not raising this defense.

### C. Counsel Failed to Obtain and Utilize Grand Jury Transcript

Petitioner additionally alleges that counsel's ineffective assistance resulted in the rejection of the Petitioner's suppression motion.  Petitioner alleges that counsel failed to obtain a grand jury transcript which would have revealed information that could have resulted in the success of the motion.  Petitioner does not explain either the nature of the information revealed nor its effect on his defense.  Nor has he submitted a copy of the grand jury transcript for review or a copy of the transcript from the motion's hearing.  It is unclear whether the use of the grand jury transcript would have resulted in the success of the motion.

This conclusory allegation is insufficient to invalidate Petitioner's plea agreement or his waivers.  *See e.g., James v. Borg,* 24 F.3d 20, 26 (9th Cir. 1994) ("conclusory allegations [of ineffective assistance of counsel] which are not supported by a statement of specific facts do not warrant habeas relief.").  *See also Stein v. U.S.*, 390 F.2d 625, 627 (9th Cir. 1968) ("[i]t is well-established that mere conclusory allegations are not sufficient to warrant relief under a §2255 motion"); *Shah v. U.S.*, 878 F.2d 1156, 1161 (9th Cir.1989) ("mere conclusory allegations do not warrant an evidentiary hearing").

Additionally, in a letter to counsel dated March 14, 2004, Petitioner states, "Tom, you did very well at the suppression motion and it is not your fault that the judge did not suppress the motion."  This statement indicates that Petitioner had confidence in his attorney's actions, shortly after the motion in question failed.  For Petitioner to now argue that his attorney was ineffective in this matter, leaves the Petitioner's statements lacking in credibility. Because Petitioner has alleged only conclusory allegations regarding the failure to obtain the grand jury transcript, he has failed to demonstrate ineffective assistance of counsel on this ground.

### D. Counsel Failed to Prepare for Trial

Petitioner also alleges that counsel rendered ineffective assistance by failing to conduct

pretrial investigation, failing to interview witnesses, and failing to investigate the facts of his case.[1] Where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. *Hill*, 474 U.S. at 52.

However, counsel did conduct pretrial investigation as indicated by Exhibit C of Shetty's petition. In this letter, written by Petitioner's counsel and dated February 10, 2004, trial counsel lists the Government's evidence against Petitioner, discusses the possible effects of attacking the credibility of Government witnesses, recommends litigating the suppression motion, and discusses defense strategies. Although Petitioner now alleges that counsel was unfamiliar with his case, this four page letter indicates that counsel had an understanding of the evidence against Petitioner and potential defense strategies.

Next, Petitioner alleges that counsel rendered ineffective assistance by failing to interview witnesses for the defense. In support of this position, Petitioner has submitted documents which indicate that the defense investigator attempted to contact one witness, but was unable to do so. Furthermore, within the Petitioner's traverse, Petitioner included a four page "Defense Witness List." Petitioner has not indicated that this list was given to his counsel or that counsel was made aware of the individuals named. Moreover, Petitioner did not indicate the expected testimony of the witnesses on the list or their availability to testify. In fact, the above referenced letter written by Petitioner's counsel to Petitioner indicates that counsel was not informed of potential defense witnesses. Rather, counsel states:

> [a]nother problem is our lack of witnesses to refute the government's

---

[1] The Court notes that Petitioner also alleges that counsel failed to "adequately research relevant law" in both his Motion and Reply. However, in both the Motion and Reply, Petitioner does not allege how counsel failed to research relevant law. Rather, the sections of the Motion and Reply addressing counsel's alleged failure to research law seem to be continued discussions of counsel's alleged failure to investigate facts of the case. The Court therefore does not address how counsel allegedly failed to research relevant law.

>claims. In our discussions about the matter, you have indicated that you
>do not believe there are persons I can call who worked with you and
>who will provide honest testimony that refute the government's claims.
>In all likelihood, you may be our only available fact witness at trial.

Additionally, Petitioner alleges that counsel failed to investigate the facts of his case. Petitioner specifically alleges in the Motion that counsel should have discovered that he was improperly charged "because he never obtained loans for any buyers." Rather, Petitioner contends, "all buyers involved in the alleged fraud independently obtained their own loans." In essence, Petitioner argues that counsel would have learned that Petitioner did not in fact commit the charged crimes. However, as stated above, the letter written by counsel included in Petitioner's Motion, Exhibit C, and the Defense Witness List included in Petitioner's Response indicate that counsel did in fact investigate the facts of Petitioner's case.

Lastly, Petitioner did not indicate to the Court that he was unhappy with the quality of his counsel. At the Change of Plea Hearing held on April 8, 2004, while under oath, Petitioner stated to the Court that he was satisfied with the representation of his attorney and the advice that was given to him. In addition to this statement, within the March 14, 2004 letter written by Petitioner to his counsel, Petitioner states that his attorney was "working very hard" and that Petitioner had "a lot of faith" in his attorney.

Therefore, Petitioner's current claims are unfounded. Based on an objective standard of reasonableness, there is no basis on which to conclude that counsel failed to perform his job as trial counsel within professional norms. Counsel made an informed decision when he recommended his client agree to the plea.

### E. Counsel Failed to Adequately Consult with Petitioner

Petitioner further alleges that counsel failed to consult with him about the plea agreement and failed to consult in such a way as to determine all legally relevant information. Petitioner offers no explanation of what more counsel could or should have done to insure Petitioner's understanding of the plea. Further, Petitioner represented to the Court that counsel had advised him and that he

1 understood the consequences of the charges against him.  Although plea hearings are not always
2 perfect nor uniformly invulnerable to subsequent challenge, a defendant's representation at a plea
3 hearing carries a strong presumption of truthfulness.  *See e.g. Blackledge v. Allison*, 431 U.S. 64,
4 74 (1977).

5 Again, in contrast to these allegations are the statements made by Petitioner, both under oath
6 and otherwise, which indicated satisfaction in his representation.  At the Change of Plea Hearing
7 held on April 8, 2004, Petitioner indicated that the plea was entered into voluntarily and that he was
8 satisfied with his representation.  Petitioner additionally indicated to the Court, while under oath,
9 that he had engaged in discussions with his attorney concerning the indictment against him, possible
10 defenses, and the facts surrounding his case.  The current claim that counsel failed to adequately
11 consult with the Petitioner lacks credibility in light of Petitioner's representations at sentencing,
12 which are presumed to be truthful.

**F. Counsel Failed to Object to Violation of Federal Rule of Criminal Procedure 11**

14 Petitioner additionally alleges that counsel was ineffective in failing to allege a Federal Rule
15 of Criminal Procedure Rule 11 violation.  Federal Rule of Criminal Procedure Rule 11(b)(2) states
16 that:

> [b]efore accepting a plea of guilty or nolo contendere, the court must
> address the defendant personally in open court and determine that the
> plea is voluntary and did not result from force, threats, or promises
> (other than promises in a plea agreement).

21 Although Petitioner concedes that the Court determined his plea to be voluntary at the
22 Change of Plea Hearing, he alleges that counsel was ineffective by failing to address the allegedly
23 "coercive" statements made by the sentencing Judge at the hearing. Plaintiff specifically alleges that
24 rather than preventing the alleged plea coercion on behalf of the Court, counsel chose to actively
25 participate in it.

26 Petitioner alleges that he was coerced into accepting the plea when the sentencing Judge
27 stated that Petitioner's sentence would be "maxed out" should Petitioner proceed to trial.  These

10

1 statements made by the Court do not constitute threats and are not sufficient to make Petitioner's
2 acceptance of the plea involuntary. In *U.S. v. Jaramillo-Suarez*, 857 F.2d 1368 (9th Cir. 1988), the
3 court committed reversible error by failing to advise defendant, prior to accepting his guilty plea,
4 of the maximum sentence he faced. Had the Judge in this case failed to tell Petitioner of the
5 maximum sentence he would face prior to sentencing, he would have committed reversible error.
6 The Judge in this case was following proper sentencing procedure and informing Petitioner of his
7 options, not coercing Petitioner with threats of a "maxed out" sentence.

8 Furthermore, these statements were not sufficient to increase the Court's obligation to the
9 Petitioner. As the Petitioner concedes, the Court fulfilled its obligation under Rule 11, by
10 questioning the Petitioner in Court as to the voluntariness of his plea. During this Change of Plea
11 Hearing, the Court made a specific finding that the agreement was entered into voluntarily and free
12 of coercion. It is unreasonable for the Petitioner to expect the Court to engage in further labor to
13 determine the true feelings of a defendant when that defendant has chosen not to voice his concerns
14 when prompted by questions from the Court.

**G. Plea Agreement was Not Voluntary Because Petitioner was Ill-Advised Regarding Immigration Concerns**

17 Petitioner alleges that he was not informed that a conviction of an aggravated felony could
18 open up the possibility of deportation. Petitioner alleges that he was told by counsel that the
19 language included within the plea agreement, which was brought to the Petitioner's attention by the
20 Court, was standard "boilerplate language" that the Petitioner should not worry about. Petitioner
21 claims that this erroneous legal advice renders the plea invalid.

22 Presently, the "Supreme Court of the United States has not yet ruled on whether or under
23 what circumstances a defense lawyer's misrepresentation or non-representation to an alien defendant
24 of the immigration consequences of pleading guilty to a criminal charge constitutes inadequate,
25 incompetent, or ineffective assistance or otherwise warrants the setting aside, vacating, or
26 withdrawing of the alien's guilty plea." Gregory G. Sarno, J.D., *Ineffective Assistance of Counsel:*
27 *Misrepresentation, or Failure to Advise, of Immigration Consequences of Guilty Plea - Federal*
28

1  *Cases*, 90 A.L.R. FED. 748 (1998). However, the Second Circuit has found that "where a defendant
2  has been erroneously advised by counsel that his plea would not result in deportation, no 'manifest
3  injustice' within Federal Rule of Criminal Procedure 32(d) would occur in the denial of a motion
4  to withdraw a plea of guilty." *Michel v. U.S.*, 507 F.2d 461, 464 (2d Cir. 1974).

Given the Second Circuit's finding that erroneous advisement by counsel that a plea would not result in deportation is insufficient to find "manifest injustice," it is clear that Petitioner's argument fails. Contrary to the Petitioner's position, the plea agreement which Petitioner signed included a provision which specifically stated that deportation was a possible consequence of entering into the agreement. In signing the agreement, Petitioner indicated that he "understands that the convictions in this case may subject defendant to deportation." Additionally, Petitioner acknowledged in the agreement that he had read, understood, and accepted the terms of the plea agreement, including the possible consequences of entering into the agreement. The agreement stated, specifically that, "my attorney has advised me of my rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of entering into this agreement."

Furthermore, at the time of the entry of the guilty plea, the Court expressly advised Petitioner that by pleading guilty, Petitioner may be subject to deportation. In response, Petitioner indicated that he had no questions about the possibility of deportation. Lastly, Petitioner stated that he sought the advice of immigration attorneys, after the Change of Plea Hearing and prior to the December 2004 sentencing.

### H. Counsel Knew or Should Have Known that Petitioner Was Incompetent to Plead Guilty

Petitioner additionally alleges that he suffered a mental and nervous breakdown and was too ill to have the capacity to waive his rights and plead guilty. Petitioner argues that counsel was ineffective because counsel knew or should have known Petitioner was too incompetent to plead guilty based on his condition. The Court first notes that the proposition that counsel should have known Petitioner was too incompetent to plea as a basis for ineffective assistance of counsel is without authority. *See Theriot v. Whitley*, 18 F.3d 311, 313 (5th Cir. 1994). Accordingly, the Court

addresses whether counsel knew Petitioner was incompetent to plead guilty.

As stated by the Fifth Circuit, it is a violation of a defendant's due process rights to accept a guilty plea and conviction if he is mentally incompetent. *Bouchillon v. Collins*, 907 F.2d 589, 592 (5th Cir. 1990). A defendant can "succeed in establishing that he was prejudiced by his attorney's failure to investigate only if he can demonstrate by a reasonable probability that he was incompetent to plead guilty." *Theriot v. Whitley*, 18 F.3d 311, 313 (5th Cir. 1994). The test of incompetency is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Bouchillon*, 907 F.2d at 592. (Citations omitted).

The Court finds counsel was not ineffective because there is no reasonable probability that Petitioner was incompetent to plead guilty. As previously discussed, Petitioner indicated at the Change of Plea Hearing that he consented to the agreement. In addition to the Petitioner's statement, the Court made a specific finding that the Petitioner appeared lucid and competent at the April 8, 2004 hearing. The Court stated: "I've been able to view you also in open court. You're entirely lucid; you've comprehended these proceedings; you're highly intelligent. I see no impairment, no inability to understand; therefore, I accept your plea, sir." Given these facts, it is clear that Petitioner has not overcome his burden to prove by a reasonable probability that he was incompetent to plead. Accordingly, counsel was not ineffective by "failing" to recognize Petitioner was incompetent.

**I. Counsel Failed to Inform Petitioner of the Nature of Charges and Terms of Plea Agreement**

Petitioner also alleges that counsel failed to "fully and correctly inform [Petitioner] of the nature of charges against him." Petitioner further alleges that the elements of the charges and possible defenses to the charges were also not explained to him by counsel. Petitioner states that it was only after he signed the plea agreement that a copy of the plea was sent to him for review and he realized the gravity of the plea. The Supreme Court has stated that a plea is not voluntary unless the defendant has "real notice of the true nature of the charge against him." *Henderson v. Morgan*,

13

426 U.S. 637, 645, 96 S.Ct. 2253, 2257 (1976). "If the trial record shows that the defendant understood the elements of the charge against him, then the court's failure to inform him of those elements does not render the guilty plea infirm." *Theriot*, 18 F.3d at 314. Further, the "guilty plea form is 'prima facie evidence that petitioner was informed of the elements of ...' the crime." Id. (Quoting *Bonvillain v. Blackburn*, 780 F.2d 1248, 1250 (5th Cir. 1986)).

The Court finds that counsel was not ineffective in allegedly failing to inform Petitioner of the nature of charges and terms of the plea agreement. As an initial matter, the Court notes that Petitioner signed the plea agreement which stated that he was informed of the nature of the charges against him, as well as possible defenses and the terms of the plea agreement. Accordingly, there is prima facie evidence that Petitioner was informed of the elements of the plea. Additionally, the Petitioner was informed by the Court of the terms of his plea agreement and the nature of the charges against him during the Change of Plea Hearing. As indicated in the Change of Plea Hearing transcript, the Court read to Petitioner the charges he faced, the elements of the charges, and the terms of the agreement to which he was consenting. At that time Petitioner indicated that he understood this information and consented to enter the plea. Thus, this argument fails to demonstrate how counsel was ineffective.

**J. Counsel Failed to Notify Court of Conflicts Between Counsel and Petitioner**

Petitioner claims that on or about March 9th, 2004, he and counsel engaged in a serious disagreement in which counsel threatened to leave the case. Petitioner alleges that counsel had a duty to notify the Court of this conflict and that the situation warranted reappointment of counsel. Petitioner further alleges that the trial Court would have had a duty to appoint separate counsel. "The Supreme Court [has] established a separate analysis to determine whether a conflict of interest results in a per se violation of the Sixth Amendment right to counsel[:] [i]f a criminal defendant can show that his counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance....'" *Mathis v. Hood*, 937 F.2d 790, 795 (2d Cir. 1991). (Quoting *Strickland*, 466 U.S. at 692) (citations omitted). Examples of per se Sixth Amendment violations where there were actual conflicts of interest include "where the defendant's

attorney was disqualified from the practice of law," *Solina v. United States*, 709 F.2d 160, 168 (2d Cir.1983), and where the defendant's attorney was implicated in the same crime for which he was representing his client, *United States v. Cancilla*, 725 F.2d 867, 870 (2d Cir.1984)." *Mathis*, 937 F.2d at 795.

The Court finds no "conflict of interest" between Petitioner and counsel in violation of the Sixth Amendment. Rather, Petitioner seems to be confusing the legal term "conflict of interest" with the common term "conflict." To have a conflict of interest sufficient to require disclosure to the Court, Petitioner's attorney would have had to have a personal interest in the underlying proceedings or a conflict resulting from representation of other involved parties. A disagreement between counsel and Petitioner as described by Petitioner does not establish a conflict of interest.

**IV. DISPOSITION**

The Court finds that Petitioner's guilty plea was not a result of ineffective assistance of counsel because Petitioner's counsel acted reasonably. Accordingly, because Petitioner's right to effective assistance of counsel was not violated, there is no "complete miscarriage of justice" as required to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. The Court hereby DENIES Petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.

IT IS SO ORDERED

DATED: March 27, 2009

_David O. Carter_
DAVID O. CARTER
United States District Judge